**Lorenzo R. YBARRA, Appellee,**

v.

**BURLINGTON NORTHERN, INC., a Corporation, Appellant.**

**No. 81–1957.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 11, 1982.

Decided Sept. 28, 1982.

Knudsen, Berkheimer, Beam, Richardson & Endacott, Richard A. Knudsen, Trev E. Peterson, Thomas C. Sattler, Lincoln, Neb., for appellant.

DeParcq, Anderson, Perl, Hunegs & Rudquist, P.A., Richard Hunegs, and Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson, II, Minneapolis, Minn., and Higgins & Okun, John J. Higgins, Omaha, Neb., for appellee.

Before HEANEY, ARNOLD and JOHN R. GIBSON,* Circuit Judges.

HEANEY, Circuit Judge.

Defendant Burlington Northern Railroad Company appeals from a judgment in favor

---

* United States District Judge for the Western District of Missouri at the time this case was submitted, sitting by designation.

of Lorenzo Ybarra on his action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51–60. The defendant contends that the district court committed reversible error in its jury instructions. We hold that the charge to the jury was proper under the FELA, and affirm the district court's judgment.

### I.

Lorenzo Ybarra began working as a laborer for Burlington Northern in Lincoln, Nebraska, in December, 1972. On October 17, 1977, Ybarra suffered an injury to his back while he and another employee were servicing a Burlington Northern switch-engine locomotive. Ybarra was injured while lifting a five-gallon bucket of oil, weighing forty to fifty pounds, to lubricate the switch engine. The lubricating process required Ybarra to lift the oil bucket with one hand from below the level of his feet by squatting down and reaching away from his body while holding onto a railing with his other hand. Ybarra then lifted the bucket up and twisted slightly to get onto a platform, from where he lifted the bucket up further and poured the contents into an oil receptacle. Each switch-engine locomotive required eight to ten buckets of oil for a complete servicing. On the day of the injury, Ybarra felt a sharp pain radiating down his back and into his right leg while he was lifting the third bucketful of oil.

After conservative treatment for the injury, a doctor for the defendant recommended surgery. In November, 1977, Ybarra underwent a laminectomy and an excision of the lumbar sacral disc. This surgery failed to alleviate the plaintiff's symptoms, and additional surgery was performed in April, 1978.

Ybarra returned to work at Burlington Northern in February, 1979, as a janitor. The railroad doctor certifying Ybarra's return explicitly limited his lifting to thirty pounds and prohibited any shoveling. Ybarra still suffers considerable back pain, wears a brace and periodically receives pain-relieving injections. His medical expert at trial and his current treating physician testified that Ybarra suffers from a permanent disability of thirty percent and fifteen to twenty percent, respectively.

Ybarra instituted this action under the FELA in January, 1980, alleging that his back injury on October 17, 1977, was caused by the defendant's negligence. The jury, in a general verdict, found in favor of Ybarra and awarded him $185,000 in damages. The district court granted Burlington Northern's motion for credits totaling $8,694.80 against the judgment, but denied its motion for j.n.o.v., or alternatively for a new trial. The defendant now appeals, contending that the court below committed reversible error in giving and failing to give certain jury instructions.

### II.

The FELA makes a common carrier engaged in interstate commerce "liable in damages to any persons suffering injury while he is employed by such carrier in such commerce * * * resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier * * *." 45 U.S.C. § 51. Under the FELA, "the railroad will be liable if its or its agent's negligence played any part, *even the slightest,* in producing the employee's injury." *Richardson v. Missouri Pacific Railroad Co.,* 677 F.2d 663, 665 (8th Cir. 1982) (emphasis added). *Accord, Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957); *Boeing Co. v. Shipman,* 411 F.2d 365, 371–373 (5th Cir. 1969). In *Chicago, Rock Island and Pacific Railroad Co. v. Melcher,* 333 F.2d 996, 999 (8th Cir. 1964), this Court stated: "Under the [FELA], the right of the jury to pass upon the question of fault and causality must be most liberally viewed. * * * [T]he jury's power to engage in inferences must be recognized as being significantly broader than in common law negligence actions."

Even in a FELA case, however, it remains improper for a court to instruct the jury on matters for which there is no support in the record. *See, e.g., Richardson v. Missouri Pacific Railroad Co., supra,* 677

F.2d at 666. *Wright v. Farmers Co-op of Arkansas and Oklahoma,* 620 F.2d 694, 697 (8th Cir. 1980). Burlington Northern argues that the district court committed reversible error by giving four instructions, *see infra,* that are unsupported by any evidence in the record. Each of these four instructions concerned alleged negligent conduct by the defendant which, if found by the jury to have occurred, would render Burlington Northern liable to Ybarra for damages. The railroad argues that the general verdict in favor of Ybarra cannot be sustained because it is impossible to determine whether the jury based its verdict on a proper theory of liability, or instead on one of the four allegedly erroneous theories submitted by the district court. *See, e.g., Otten v. Stonewall Insurance Co.,* 511 F.2d 143, 148 (8th Cir. 1975); *Local 978, United Brotherhood of Carpenters & Joiners of America v. Markwell,* 305 F.2d 38, 48 (8th Cir. 1962).

■■ An appellate court may set aside a jury verdict only when there is no evidence of substance upon which reasonable persons could differ. *E.g., McCamley v. Schockey,* 636 F.2d 256, 258 (8th Cir. 1971). In reviewing the district court's denial of defendant's motion for j.n.o.v. or new trial, we are not free to weigh the evidence, to pass on the credibility of witnesses or to substitute our judgment for that of the jury. *E.g., Farner v. Paccar, Inc.,* 562 F.2d 518, 522 (8th Cir. 1977). Instead, we must view the evidence most favorably to the plaintiffs and give them the benefit of all reasonable inferences to be drawn from the record. *Id.* With these principles in mind, we turn to the jury instructions that Burlington Northern challenges.

### III.

Burlington Northern first contends that the district court erred in instructing the jury that the railroad must publish and enforce adequate safety rules in the exercise of its duty to use reasonable care in protecting its employees.[1] It argues that there was no evidence that it failed to do either. We disagree.

The plaintiff concedes that Burlington Northern has promulgated safety rules concerning lifting by employees. These lifting rules instruct employees, *inter alia,* to "keep the object as close to the body and near your own center of gravity as possible * * * [and] avoid twisting the body as the weight is released * * *." The plaintiff, however, contends that Burlington Northern has failed to enforce these lifting rules.

■■ When the evidence shows that the railroad customarily does not enforce a safety rule, the jury is entitled to consider whether that custom constituted negligence and whether it caused, in whole or part, the plaintiff's injury. *Flanigan v. Burlington Northern, Inc.,* 632 F.2d 880, 883–884 (8th Cir. 1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1370, 67 L.Ed.2d 349 (1981). The record contains substantial evidence that it was the defendant's custom not to enforce these lifting rules during the switch-engine servicing involved here. Ybarra and his coworker, Jerry Vannest, testified that the defendant's servicing procedure required the worker to lift a forty to fifty-pound bucket of oil with one hand from below the level of his feet while squatting and then twisting on the side of the locomotive, all the time holding onto the engine with the other hand. Dr. Tribulato, plaintiff's medical expert, testified that the lifting procedure for oil servicing was "a very poor way of lifting" that caused "considerable stress on the back, probably about as much abnormal stress as you can get with that amount of weight." The harmful effects of this lifting method were magnified by the fact that each switch engine required eight to ten buckets of oil for a complete lubrication.

---

1. The district court instructed:

Now, it was the duty of the defendant railroad to make and to publish to its employees such sufficient and necessary rules and regulations and prescribe such proper and adequate procedures for them to follow as reasonable care required under the circumstances then and there existing. In other words, the railroad has a duty to exercise reasonable care for the protection of its employees.

The plaintiff also testified that he had used this lifting method since he began working for Burlington Northern in 1973. Vannest stated that he had used the two-man bucket lifting procedure since 1968. Plaintiff's superior, Arthur Jaeb, the superintendent of locomotives, testified that he had seen Ybarra lifting the oil bucket in the described manner, and he had not ordered or suggested that the plaintiff use an alternative procedure [2] because he believed that it was acceptable and consistent with the Burlington Northern's safety rules. Jaeb further stated that the lifting rules quoted above did not apply to the five-gallon can used in the servicing procedure. There is no record evidence that Burlington Northern's safety manual, in fact, excepts five-gallon cans from its lifting rules.

From the foregoing evidence, the jury could reasonably find that the defendant, through its agents, knowingly failed to enforce its safety rule regarding lifting. Accordingly, the district court did not err in instructing the jury that Burlington Northern had a duty to promulgate and enforce adequate safety rules.

Burlington Northern next contends that the district court erred in instructing the jury that the defendant would be liable for negligence if it assigned Ybarra to, or its doctor qualified him for, work that they knew or should have known was beyond his physical capacity.[3] Specifically, Burlington Northern argues that no jury could reasonably find that it assigned Ybarra to, or its doctor qualified him for, work that might aggravate a previous injury because there is no record evidence showing that the plaintiff's prior physical condition was in any way connected with the injury he sustained in October, 1977. We disagree.

In *Fletcher v. Union Pacific Railroad Company,* 621 F.2d 902, 909 (8th Cir. 1980), *cert. denied,* 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981), this Court stated:

> A railroad has a duty to assign employees to work for which they are reasonably suited. A railroad breaches that duty if it negligently assigns an employee to perform work beyond his capacity. * * * Generally, a railroad has no duty to ascertain whether an employee is physically fit for his job, but if it undertakes to give physical examinations, it is liable if it performs such undertaking negligently. * * * Where a physician certifies the employee as fit to return to heavy labor, it is not the employee's burden to show malpractice by the examining physician, rather it is sufficient to show that the railroad knew or should have known that the employee was unfit for the work because of his condition. [Citations and footnotes omitted.]

The plaintiff introduced medical records showing that he suffered a back strain at work in 1973 that kept him off the job for a week, and he was treated on three occasions in April and May, 1976, for neck, back and shoulder pain which he claimed

---

**2.** Ybarra testified that a hose and a pump were used to oil diesel-engine locomotives in the diesel shop, which is located apart from the area where switch-engine locomotives are serviced. Although the working conditions and equipment in the lower yards where Ybarra worked and the diesel shop were different, a hose and pump apparently could have been used to lubricate switch engines as well as diesel engines.

**3.** The district court's charge to the jury concerning the duty of Burlington Northern was:

> The defendant railroad has a duty to exercise reasonable care so as not to aggravate a known weakened physical condition or disability in an employee by assigning that employee work which the defendant knows, or in the exercise of reasonable care should know, would aggravate or cause injury to such employee because of the known weakened physical condition or known disability. Its instruction concerning the railroad's doctor was:

> Now, similarly, where the defendant undertakes the care, treatment and medical advice of its employees, a duty arises on the part of the physician selected by the railroad not to qualify an employee for work which said employee would be unable to perform without the likelihood of injury to himself.

> In other words, if the selected physician knew or in the exercise of reasonable care should have known that returning plaintiff to unrestricted work would cause further injury because of plaintiff's health and disability, then defendant railroad would be liable for the damages, if any, caused thereby.

resulted from a work-related injury in October, 1975. Burlington Northern does not dispute the fact that it knew about these injuries prior to October, 1977. Moreover, it is also uncontested that the plaintiff, with the defendant's knowledge, was performing heavy manual labor from 1973 through 1977, including the bucket-lifting procedure in controversy here. Finally, the testimony of plaintiff's medical experts shows that the defendant knew or should have known that its bucket-lifting method placed heavy stress on the employees' backs and could possibly cause serious injuries.

Despite the hazards involved in the oil servicing task and the defendant's knowledge of Ybarra's previous back injuries, no doctor or supervisory employee for Burlington Northern disqualified him before October 17, 1977, from performing the job that resulted in his injury at that time. Based on this failure, the jury could reasonably infer that the defendant and its doctor breached their duties not to assign Ybarra to or qualify him for work beyond his physical capacity if the plaintiff introduced sufficient evidence showing that his 1977 injury was caused in full or part by his previous injuries.[4]

We agree with the district court that the plaintiff introduced sufficient evidence that his injury in 1977 was related to his previous work-related injuries. It is true, as the defendant points out, that both the plaintiff's current physician, Dr. Fulcher, and his medical expert at trial, Dr. Tribulato, testified that Ybarra's present back complaints stem from the October, 1977, injury.[5] Nonetheless, none of the doctors who testified at trial, for either the plaintiff or the defendant, were willing to rule out the possibility that Ybarra's prior work-related injuries had contributed to his current condition. Indeed, Dr. Fulcher stated that the injury to Ybarra's disc might have occurred prior to October 17, 1977.

The foregoing evidence shows that Ybarra's previous injuries, of which the defendant concededly had knowledge, may have been related to his 1977 injury. Thus, it is sufficient to raise a jury question under the FELA. Accordingly, the district court did not err in instructing the jury that Burlington Northern and its doctor had duties not to assign Ybarra to, or qualify him for, work that was beyond his physical capacity.

Burlington Northern also contests the following instruction:

If you find that the defendant railroad is liable to plaintiff for an injury which impaired plaintiff's physical condition, the defendant railroad would also be liable for harm sustained in a subsequent incident, if any, which would not have occurred had plaintiff's condition not been impaired, and which was a normal consequence of such impairment.

The parties dispute the intended meaning of this instruction. The defendant argues that this instruction concerns injuries subsequent to October 17, 1977, and, thus, the district court erred in giving it because there is absolutely no evidence that Ybarra was injured after that date. Ybarra, on the other hand, contends that the instruction was intended to refer to his history of back ailments prior to October 17, 1977, and to the effect of his previous work-related injuries on defendant's liability for the injury on that date.

■ Ybarra has never claimed that he was injured after October 17, 1977, or sought any damages for any incident other

---

**4.** Ybarra's private physician, rather than the defendant's doctors, apparently treated the plaintiff for his ailments in 1973 and 1976. Nonetheless, we believe that on the facts present here, the district court properly found that a railroad doctor had a duty not to qualify Ybarra for work beyond his physical capacity.

**5.** The defendant also makes much of Ybarra's testimony that prior to October, 1977, he felt good and had no back difficulties, that he felt physically able to do the job and that the job did not give him any problems. Burlington Northern's reliance on this testimony is misplaced. It is clear, as the district court found, that Ybarra had no medical expertise and his assessment of his physical condition does not prove that his previous injuries were not related to the October, 1977, incident. *See Fletcher v. Union Pacific Railroad Co.,* 621 F.2d 902, 909 (8th Cir. 1980).

than the one on that date. Moreover, the trial transcript includes a colloquy among counsel for the parties and the district judge which supports plaintiff's interpretation of the instruction. Thus, giving Ybarra the benefit of all reasonable inferences, we adopt the plaintiff's construction of this instruction. So construed, this instruction only relates to defendant's negligence in assigning the plaintiff to a job in which prior work-related injuries could contribute to a new injury or in which prior work-related injuries could be aggravated. We have already held that the record contains sufficient evidence to support the district court's instructions that Burlington Northern would be negligent if it assigned Ybarra to, or its doctor qualified him for, work that was beyond his physical capacity in light of his previous weakened condition.

Moreover, the district court's "subsequent injury" instruction did not prejudice the defendant even if we accept its interpretation of the charge. Construed in that manner, the instruction would relate only to the issue of damages because under it and the rest of the charge, the jury could still reasonably find the defendant liable for the plaintiff's injury in October, 1977. Since Ybarra never claimed in his complaint or at trial that Burlington Northern was liable for any negligent acts or omissions after October, 1977, the jury's award could scarcely include damages for conduct after that date. The district court, therefore, did not commit reversible error in giving this "subsequent injury" instruction.

In sum, the FELA requires only that a plaintiff prove that negligent conduct by a defendant played some role, however slight, in causing his or her injury. *See supra,* at 149. Although the record evidence supporting the four instructions challenged here by Burlington Northern is not great, it is sufficient to satisfy FELA standards. Hence, the district court did not err in submitting any of the four challenged issues to the jury.

## IV.

Finally, Burlington Northern argues that the district court erred by failing to give the instruction it requested concerning the tax consequences of any damages awarded by the jury.

In *Norfolk & Western Railway Co. v. Liepelt,* 444 U.S. 490, 502, 100 S.Ct. 755, 761, 62 L.Ed.2d 689 (1980), the Supreme Court, in reviewing a wrongful death case under the FELA, held that the district court erred in not instructing the jury that the damage award was not subject to income tax. In *Flanigan v. Burlington Northern, Inc., supra,* 632 F.2d at 887, this Court applied the *Liepelt* rule in a FELA case involving a personal injury to a railroad worker. The defendant, relying on these cases, contends the district court here erred in refusing to instruct the jury that, "If your verdict is in favor of the plaintiff, you should calculate his pat [sic] loss of earnings on the basis of his net earnings, i.e., the earnings left to him after the payment of income taxes."

The district court, however, instructed the jury as follows concerning damages, and lost wages in particular:

> If damages are awarded, of course they must be reasonable. They must not be enlarged so as to constitute either gift or windfall to the plaintiff or punishment or penalty to the defendant. The only purpose of damages is to award reasonable compensation.
>
> *    *    *    *    *    *
>
> Now if you should find that the plaintiff is entitled to a verdict, in arriving at the amount of the award for his lost earnings and earnings capacity, you should include,
>
> (1) The value of working time or earnings lost as a result of injury from time of the injury to the present time;
>
> *    *    *    *    *    *
>
> *I also advise you, members of the jury, that any amounts which you allow in damages for lost income, either past or future, is not taxable to the plaintiff and you should not increase or decrease the amount of the award because of federal taxes because an award in this kind of a case is not subject to payment of any federal taxes.* [Emphasis added.]

Although Burlington Northern was entitled to an instruction concerning the nontaxability of any damage award to the plaintiff, it was not entitled to the exact language it proposed. *E.g., United States v. Hopping*, 668 F.2d 398, 400 (8th Cir. 1982). A charge to the jury is proper as long as it adequately and correctly covers the substance of the requested instruction and it is fair to both parties. *Id.*

The district court's charge to the jury regarding the tax consequences of any damages award adequately covered the substance of the defendant's requested instruction and satisfies the requirements of *Norfolk & Western Railway Co. v. Liepelt, supra*, 444 U.S. at 490, 100 S.Ct. at 755, and *Flanigan v. Burlington Northern, Inc., supra*, 632 F.2d at 880. Accordingly, the court below did not err in refusing to give the precise instruction requested by the defendant.

The district court's decision, therefore, is affirmed.