The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: May 12, 2025

**No. A-1-CA-41379**

**GARY A. SAUNDERS,**

      Plaintiff-Appellee,

v.

**UNION PACIFIC RAILROAD COMPANY,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nancy J. Franchini, District Court Judge**

Mendez Isaac Joudi, PLLC
Joseph G. Isaac
Tiffany N. Joudi
El Paso, TX

L. Helen Bennett, PC
L. Helen Bennett
Albuquerque, NM

for Appellee

Hall & Evans, LLC
Cari Neill
Gina M. Rossi
Denver, CO

Haynes and Boone, LLP
Kent Rutter
Ryan Pitts
Houston, TX

for Appellant

**OPINION**

**YOHALEM, Judge.**

{1}     Defendant Union Pacific Railroad Company (Union Pacific) appeals a jury verdict awarding damages to Plaintiff Gary A. Saunders, a Union Pacific employee who was assaulted by coworker Eric Magoon while both were working at a jobsite near Deming, New Mexico. The Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, provides the exclusive remedy for the death or injury of a railroad employee caused by the negligence of the employer railroad. A railroad is liable under the FELA for injuries to its employee from the intentional tort of a coworker if the railroad was negligent under either a respondeat superior or a direct negligence theory. The jury found Union Pacific negligent, and awarded Plaintiff substantial damages for the injuries caused by Magoon's assault. Union Pacific asks this Court to set aside the verdict, and order a new trial, contending that (1) there was insufficient evidence that Union Pacific was negligent; (2) the jury instructions incorrectly stated the governing law; (3) the jury instruction on Plaintiff's theory of liability included negligent supervision and negligent training claims that were not supported by substantial evidence; (4) the jury instruction on damages, by including an instruction on aggravation of a preexisting condition, allowed for double recovery of noneconomic damages; and (5) the damages awarded by the jury were excessive. Alternatively, Union Pacific argues that (1) the FELA, 45 U.S.C. § 55, and the

collective bargaining agreement, require that the amounts paid by Union Pacific for Plaintiff's medical bills be offset from the judgment; and (2) the amounts subject to the liens of the Railroad Retirement Board (RRB) and of an insurer should also be offset from the judgment. We remand solely to allow the district court to determine and offset the amount required by the terms of the collective bargaining agreement, and otherwise affirm.

**BACKGROUND**

{2}	Plaintiff was an assistant foreman employed by Union Pacific. In April 2012, Plaintiff's work group (gang) were performing maintenance work on railroad tracks near Deming. Plaintiff's gang used an MS-60 car, a type of specialized vehicle for transporting waste rock and debris generated by track maintenance. Every morning before work began for the day, foremen and supervisors met in an empty bus parked at the worksite to coordinate the day's work.

{3}	On April 13, 2012, Plaintiff was present at a morning meeting with a dozen Union Pacific employees, including Magoon, who was the supervisor of the mechanic team. Plaintiff told Magoon that he needed repairs on his gang's MS-60 car—a request that Plaintiff had been making for two months, and which had not been fulfilled by Magoon. As Plaintiff began to explain that the condition of the MS-60 car was a safety issue, Magoon struck Plaintiff multiple times with his fist on Plaintiff's hard hat. Although Plaintiff suffered no immediate pain, he developed

neck pain and ten days later sought medical attention. Plaintiff was admitted to a hospital for treatment; his injuries ultimately required surgery. Plaintiff reported the incident and his injuries to Union Pacific. Medical testimony at trial corroborated Plaintiff's report that his injuries were due to Magoon's assault. We incorporate further factual discussion into our analysis of the sufficiency of the evidence.

**DISCUSSION**

**I.     Federal Law Governs a Railroad's Liability Under the FELA for Injuries to an Employee Caused by the Intentional Tort of a Coworker**

{4}     Plaintiff brought his cause of action under the FELA. Federal law provides that "damages for the death or injury of a railroad employee engaged in interstate commerce, allegedly caused by the negligence of the railroad, are recoverable exclusively from the railroad under the FELA, and may not be recovered under state law." *Janelle v. Seaboard Coast Line R.R.*, 524 F.2d 1259, 1261 (5th Cir. 1975). What constitutes negligence under the FELA is a federal question, and federal court precedent construing and applying the FELA governs. *See Urie v. Thompson*, 337 U.S. 163, 174 (1949).

{5}     When a railroad worker claims injury caused by the intentional tort of a coworker under the FELA, as Plaintiff does in this case, the railroad employer is liable only if the employer was negligent under either "a respondeat superior or a direct negligence theory." *See Mullahon v. Union Pac. R.R.*, 64 F.3d 1358, 1362 (9th

Cir. 1995) (emphasis omitted). The jury in this case was instructed on both theories of negligence.

{6}	A railroad may be found liable for negligence under a respondeat superior theory if the plaintiff was intentionally assaulted by an employee of the railroad who was acting within the scope of their employment at the time of the assault, and if that employee's conduct was, to any extent, "in furtherance of the [railroad]'s business." *Id.* (internal quotation marks and citation omitted). Alternatively, a railroad employer may be found "directly negligent" under the FELA for its employee's intentional assault if it knew or should have known of the employee's propensity to commit such assaults and should reasonably have made reasonable provision against such misconduct. *See Harrison v. Mo. Pac. R.R.*, 372 U.S. 248, 249 (1963). The railroad employer need not be able to foresee the "exact manner" of the injury, but only that "that *an* injury might occur." *Mullahon*, 64 F.3d at 1364 (internal quotation marks and citations omitted). As the United States Supreme Court has stated, "[T]he fact that the foreseeable danger [to the railroad's employee] was from intentional or criminal misconduct is irrelevant; [the railroad] nonetheless had a duty to make reasonable provision against it." *Harrison*, 372 U.S. at 249 (internal quotation marks and citation omitted). Failure to make "reasonable provision" against intentional misconduct is negligence on the part of the railroad. *Id.*

{7}     Important to the understanding of the employer's liability for negligence under both of these theories of negligence is the principle that a "[railroad] employer is liable for the negligence of its employees, regardless of rank, and regardless of whether the immediate cause of the harm was intentional." *Mullahon*, 64 F.3d at 1362 (citing 45 U.S.C. § 54). Plaintiff relied on this principle to include claims that the negligence of railroad employees in supervising, training, and reporting accidents and injuries contributed to the Union Pacific's failure to protect him from Magoon's foreseeable violent conduct.

{8}     In *Rogers v. Missouri Pacific Railroad Co.*, the United States Supreme Court held that FELA cases require less proof than ordinary negligence actions. 352 U.S. 500, 506-07 (1957). The Supreme Court stated that under the FELA, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought." *Id.* at 506 (emphasis added). New Mexico has adopted uniform jury instructions for negligence actions arising under the FELA. *See* UJI 13-901 to -921 NMRA. Consistent with *Rogers*, the New Mexico instruction on causation states that the jury should find that a plaintiff employee's injury is caused by the railroad employer's negligence when the employer's "act or failure to act played any part, *no matter how small*, in bringing about the injury or damage." UJI 13-915 (emphasis added).

{9} This liberal power to engage in inferences from the evidence extends to the jury's finding of fault, as well as to its finding of causation. Federal courts have held that "[u]nder the . . . FELA, the right of the jury to pass upon the question of fault and causality must be most liberally viewed. The jury's power to engage in inferences must be recognized as being significantly broader than in common law negligence actions." *Ybarra v. Burlington N., Inc.*, 689 F.2d 147, 149 (8th Cir. 1982) (alterations, internal quotation marks, and citation omitted); *see also Burns v. Penn Cent. Co.*, 519 F.2d 512, 514 (2nd Cir. 1975) ("Supreme Court decisions make it clear that, under . . . the FELA, the jury's power to draw inferences is greater than in common-law actions.").

## II. Plaintiff Presented Sufficient Evidence of Union Pacific's Negligence Under Both Respondeat Superior and Direct Negligence Theories of Liability

{10} The standard of review on appeal from a jury verdict applied by this Court and that applied by federal appellate courts in FELA cases is virtually identical. We, therefore, need not decide which standard applies. In assessing the sufficiency of the evidence to support a jury verdict, we review for substantial evidence. *See Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 16, 131 N.M. 100, 33 P.3d 651. "[W]e examine the record for relevant evidence such that a reasonable mind might accept as adequate to support a conclusion," viewing the facts in the light most favorable to the verdict. *Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 10,

6

136 N.M. 647, 103 P.3d 571 (internal quotation marks and citation omitted). Federal appellate courts similarly "set aside a jury verdict [in a FELA case] only when there is no evidence of substance upon which reasonable persons could differ." *Ybarra*, 689 F.2d at 150. Like this Court, federal courts "view the evidence most favorably to the plaintiffs and give them the benefit of all reasonable inferences to be drawn from the record." *Id.*

**A.      Respondeat Superior**

{11}      With this standard of review in mind, we turn to Union Pacific's argument that the evidence in the record is not sufficient to support the jury's finding that Union Pacific was vicariously liable under respondeat superior doctrine for Magoon's intentional assault on Plaintiff. Respondeat superior liability of an employer railroad for an intentional assault committed by one of the railroad's employees requires that the employee who committed the assault be shown to have committed the assault in furtherance of the railroad's business, rather than for purely personal reasons. *See Mullahon*, 64 F.3d at 1362. Union Pacific's argument on appeal focuses on what it alleges is the insufficiency of the evidence to establish that Magoon was acting in furtherance of Union Pacific's business.

{12}      In assessing the sufficiency of the evidence, we measure the evidence against the relevant jury instruction, which reads as follows:

>       Union Pacific is liable for intentional acts committed by one of its employees if:

1. The act was committed in furtherance of Union Pacific's business, or

2. Union Pacific failed to take reasonable steps to prevent a reasonably foreseeable danger of harm to . . . [P]laintiff.

An employee is acting in furtherance of Union Pacific's business when [they are] doing something [they were] employed to do or which was reasonably incidental to [their] employment.

An act is not considered in furtherance of Union Pacific's business just because it was committed at the work site or while on[ ]duty.

An employer cannot be held liable for the wanton act of its employee if the employee assaults another for the sole purpose of satisfying [their] own temper. However, if a supervisor pursues [their] official duties with an excess of zeal, the employer is liable for the torts resulting from that excess.

An assault is reasonably foreseeable if Union Pacific knew or should have known of its employee's propensity, such that it should have reasonably anticipated the intentional act.

{13} Union Pacific argues that Magoon's assault on another employee was "plainly" not one of Magoon's job responsibilities, and was therefore plainly not in furtherance of Union Pacific's business. According to Union Pacific, it "forbids any type of physical altercation between employees," and this policy alone required the jury to find that Magoon was not acting in furtherance of the railroad's business. We do not agree.

{14} The phrase "in furtherance of the employer's business," is not limited by the jury instruction to conduct that is a formal job responsibility specifically assigned to

8

the employee. The jury was instructed that "[a]n employee is acting in furtherance of [the railroad employer]'s business when [they are] doing something [they were] employed to do *or which was reasonably incidental to* [*their*] *employment.*" Therefore, conduct that is merely "reasonably incidental to [the employee's] employment" can be conduct "in furtherance of the employer's business." Moreover, even intentional misconduct or criminal conduct prohibited by the employer's policies, or by the law, can still qualify as conduct "in furtherance of the employer's business." *See Harrison*, 372 U.S. at 249 ("[T]he fact that the foreseeable danger was from intentional or criminal misconduct is irrelevant; [the railroad employer] nonetheless had a duty to make reasonable provision against it." (internal quotation marks and citation omitted)).

{15}   Only where the employee's conduct arises wholly from some external, independent, personal motive on the part of the employee, so that the employee is found to be acting solely for their own benefit, is the railroad free of respondeat superior liability. *See Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 819-20 (7th Cir. 1985) (en banc) ("The usual view . . . is that when the motive for the employee's intentional tort is personal—which is to say unrelated to his employer's objectives and therefore not in furtherance of those objectives—the employer is not liable under a theory of respondeat superior."). So long as the motive for an employee's intentional tort is to further their employer's goals or objectives, no matter how

9

misguided, the employer is liable under a theory of respondeat superior for the negligence of its agent. *Id.* at 819.

{16} The question for this Court, then, is whether there was evidence from which the jury could have reasonably inferred that Magoon did not strike Plaintiff "for the sole purpose of satisfying his own temper," Jury Instruction No. 9, but that Magoon sought, to some degree, to further Union Pacific's interests. The evidence at trial showed that Magoon's assault on Plaintiff occurred just as Plaintiff brought to Magoon's attention, in front of a dozen Union Pacific supervisors and foremen, that Magoon's failure to perform necessary repairs on the MS-60 car used by Plaintiff's gang created a safety hazard. The jury's finding that Magoon was acting in furtherance of Union Pacific's business, and not solely out of temper, or for his own interests, is supported by evidence in the record showing that Union Pacific routinely and consistently discouraged employees from reporting accidents and injuries. It had a point system in place, which the evidence showed punished not only the employee who reported an on-the-job injury, but that employee's whole gang, even if the injury was not the injured employee's fault. The injury would be put on the reporting employee's record and "points" would be deducted from the employee's whole work gang. Work gangs, which had no reported incidents or injuries, and thereby appeared on Union Pacific's records to have a perfect safety record, were rewarded. It was reasonable for the jury to infer from this evidence, and from other evidence about

what Union Pacific communicated to its employees, that it did not want any safety violations or injuries reported, that it wanted to make sure that the railroad appeared on official records to have a clean safety record. In this context, the inference that Magoon's attack on Plaintiff was motivated, at least in part, by Magoon's desire to silence Plaintiff and to warn him to not accuse Magoon of a safety violation. *See Burns*, 519 F.2d at 514 (illustrating the generous inferences the FELA allows a jury to draw in favor of an employee). Finding the evidence sufficient to show that Magoon was acting in furtherance of Union Pacific's business on this basis, the district court denied Union Pacific's posttrial motion for a new trial. We agree that substantial evidence in the record supports the jury's finding of Union Pacific's liability under a respondeat superior theory of negligence.

**B.    Direct Negligence**

{17}    We turn next to Union Pacific's argument that the evidence in the record is not sufficient to support a finding either that the physical assault by Magoon was foreseeable, or that Union Pacific could reasonably have prevented the assault, the required elements to prove direct negligence by Union Pacific. The jury was instructed, in relevant part, that it could find Union Pacific liable for Magoon's intentional assault under a direct negligence theory if it found that "Union Pacific failed to take reasonable steps to prevent a reasonably foreseeable danger of harm to

. . . [P]laintiff." The jury was given the following definition of "reasonably foreseeable" in the context of an assault:

> An assault is reasonably foreseeable if Union Pacific knew or should have known of its employee's propensity, such that it should have reasonably anticipated the intentional act.

{18}  Union Pacific's argument on appeal focuses on what it claims is the insufficiency of the evidence to show that Magoon's assault was "reasonably foreseeable." Union Pacific contends that Magoon's assault on Plaintiff could only have been reasonably foreseeable if the evidence established that Magoon had committed multiple prior acts of violence, which were reported to railroad management, putting Union Pacific on notice that such an act might again be committed by Magoon. Union Pacific points to the lack of evidence that it had been informed of any prior assault, threats of violence, misbehavior, or criminal history involving Magoon, claiming that without this sort of prior notice of similar acts by Magoon, the jury's finding of direct negligence must be reversed.

{19}  We do not agree that an employer must have received multiple reports of incidents of violence committed by an employee to support a jury finding that the employer "knew or should have known of its employee's propensity." In this case, Union Pacific acknowledges that there was testimony at trial about an argument between Magoon and another employee prior to the incident with Plaintiff, where Magoon attempted to grab the other employee's arm "in a fit of anger." The

12

employee who was the victim of that attempted assault by Magoon described grabbing and pinning Magoon's arms to stop Magoon from injuring him. Another supervisor had to step in to pull Magoon away. Union Pacific also points to evidence that neither the employee who was attacked by Magoon, nor the supervisor who intervened, reported the incident to management, something Union Pacific argues precludes reliance on this incident to support the foreseeability of the subsequent assault by Magoon on Plaintiff. We note, however, that even if the jury believed that Union Pacific management was unaware of this incident, the jury instructions allow the jury to find liability if Union Pacific "*should have known*" of an employee's propensity for violence, "such that it should have reasonably anticipated the intentional act." Although Union Pacific's written policies required reporting of any such incident, neither the employee who was assaulted by Magoon, nor the supervisor who intervened followed that policy and reported that incident. This failure to report was consistent with the evidence in the record showing that Union Pacific did not customarily enforce this policy, and in fact discouraged the reporting of injuries or incidents. Thus, this evidence, at a minimum, permits an inference that Union Pacific "should have known" of at least one prior assault by Magoon. We note that the jury could also have relied on this incident to find that the employee and supervisor involved in the incident were negligent in failing to report the incident, and that this negligence and the lack of consequences for the first incident

13

allowed Magoon to subsequently assault Plaintiff. This would be a valid basis for a finding of respondeat superior liability by Union Pacific. *See Mullahon*, 64 F.3d at 1362 ("[U]nder FELA, an employer is liable for the negligence of its employees, regardless of rank, and regardless of whether the immediate cause of the harm was intentional.").

{20} In addition to this incident involving physical assault by Magoon, there was extensive testimony from railroad employees about Magoon's short temper and aggressive treatment of employees. Supervisors and employees alike reported witnessing Magoon lose his temper, yell at employees, and be unnecessarily verbally aggressive. Employee witnesses reported that Magoon's outbursts were sufficiently frequent that Union Pacific's employees had adopted the phrase "you've been Magooned" to refer to the situation where someone was on the receiving end of an outburst by Magoon. Union Pacific argues that the only reasonable inference from this evidence is that Magoon was perhaps gruff and a tough supervisor, but that he was not physically aggressive.

{21} Although Union Pacific argues for what is perhaps one inference from this evidence, it is not the only reasonable inference and, importantly, it is not the one the jury drew. It was entirely reasonable for the jury to find that Magoon's notoriously angry and aggressive behavior and the regularity with which it occurred, together with the physical assault described above, should have put Union Pacific

14

on notice of "[Magoon's] propensity, such that it should have reasonably anticipated the intentional act" that injured Plaintiff, or an act like that assault. Union Pacific's defense that it could not have foreseen the assault on Plaintiff because the prior incident was not reported rings hollow where Union Pacific was shown to have purposely suppressed reporting of incidents. Therefore, we conclude that the evidence is sufficient to support the jury's finding of direct negligence by Union Pacific: an assault by Magoon was or should have been reasonably foreseeable.

**III.     The Jury Instructions Adequately Informed the Jury of the Elements Required to Find the Railroad Liable Under the FELA**

{22}     Union Pacific argues next that the jury instructions misstated the applicable federal law, confusing the jury, and that, therefore, remand for a new trial is required.

{23}     In reviewing a preserved assertion of error in jury instructions, this Court "seeks to determine whether a reasonable juror would have been confused or misdirected by the challenged jury instruction." *State v. Martinez*, 2021-NMSC-012, ¶ 25, 483 P.3d 590 (internal quotation marks and citation omitted). Juror confusion can arise from instructions, which either through omission or misstatement, fail to accurately describe the relevant law. *Id.* In determining whether jurors would have been confused, we view the jury instructions in their entirety; it is sufficient if the instructions as a whole provide an accurate statement of both the issues and the applicable legal framework. *See Enriquez v. Cochran*, 1998-NMCA-157, ¶ 69, 126 N.M. 196, 967 P.2d 1136. According to Union Pacific, under the instructions given,

the jury could have improperly found the railroad liable, (1) even if it found that the assault by Magoon had not occurred; or (2) that the federal standards requiring either vicarious liability under the respondeat superior doctrine, or direct negligence, were not met. Union Pacific's challenge is directed to the instruction describing the Plaintiff's claims and Defendant's defenses, and to the verdict form. We do not agree that this jury instruction or the verdict form misstated the law or created such confusion that the jury might have based its verdict on either of Union Pacific's two hypothetical erroneous understandings of the law.

{24} Plaintiff identified, and the challenged instruction listed, seven ways the Plaintiff claimed Union Pacific's employees were negligent, and then alleged that each of those acts of commission or omission had "caused or contributed to the injury and resulting damages" to Plaintiff. The list included Magoon's assault on Plaintiff; Union Pacific's failure to properly supervise and to train its employees; the failure of railroad employees to stop Magoon's assault; Union Pacific's failure to discipline Magoon for his prior misconduct and to generally enforce its policies; and the failure of railroad employees to report Magoon's prior misconduct. Union Pacific asked the district court to omit what it described as irrelevant items listed in the proposed instruction on Plaintiff's theory of the case, and instead to instruct the jury solely on "Eric Magoon violently striking Plaintiff on the top of his hard hat several times on April 13, 2012," followed by the instruction on the legal theories of

16

respondeat liability and direct negligence as applied to intentional assaults, which the district court gave in substantially the form requested by Union Pacific, and which Union Pacific does not challenge on appeal.

{25} Union Pacific's argument does not address the fact that the jury instruction it sought to replace with its own theory of the case is the instruction that describes each parties' theory of the case. The form of the instruction used by the district court in this case and its wording, apart from each party's description of its own claims, is taken directly from UJI 13-902, the New Mexico Uniform Jury Instructions entitled, "Special [FELA] statement of the case issues; claims; formula," an instruction intended by our Supreme Court to be used to state each party's theory of their case. A defendant is not entitled to replace the jury instruction on a plaintiff's theory of the case, writing it in the way it would prefer the case to be presented to the jury. "[A] party is entitled to an instruction on [their] theory of the case if there is evidence to support it." *Enriquez*, 1998-NMCA-157, ¶ 71. It was Plaintiff's choice to argue Union Pacific's negligence by listing separately each act or omission by the railroad that contributed to a foreseeable and preventable assault by Magoon.

{26} We also do not agree that this presentation of Plaintiff's case, in conformity with our uniform jury instructions, confused the jury about the need to find that Plaintiff had sustained personal injuries from an assault by Magoon on April 13, 2012. The uniform jury instruction given begins with this statement: "Plaintiff

17

claims that he sustained damages from personal injuries," before listing the acts of negligence Plaintiff claims contributed to the assault or failed to prevent the assault. The instruction then provides Union Pacific's defense to Plaintiff's claims. Union Pacific's defense denies that any of the claims of negligent conduct, including Magoon's assault, occurred, stating:

> [Union Pacific] denies [P]laintiff's claims and in addition asserts, as a further defense, that [P]laintiff's injuries and damages, if any, were the result of his preexisting medical conditions, and his failure to mitigate damages.

Union Pacific does not challenge the instruction focusing the jury on Plaintiff's injury and whether it was caused by the railroad's negligence. That instruction reads as follows:

> *When an employee of a railroad is injured while engaged in* [*their*] *employment in interstate commerce* and the injury is caused in whole or in part by the negligence of the railroad, the railroad is liable in damages.

(Emphasis added.) Thus, read as a whole, the instructions require the jury to find that Plaintiff was injured and that at least one of seven acts of negligence caused that injury.

{27}    Union Pacific also challenges on appeal the adequacy of Jury Instruction No. 9 because it did not inform the jury that the railroad is "only" liable for Plaintiff's injury from Magoon's intentional assault either under the respondeat superior or direct negligence doctrines. Union Pacific's argument relies entirely on the district

18

court's omission of the word "only" from its proposed instruction, arguing that neither this instruction nor the verdict form required the jury to find that one of these two legal requirements was met, in addition to the negligence finding. We conclude that Union Pacific did not invoke a ruling from the district court on this issue. Although it submitted an instruction which included the word "only," it never explained the significance of the word to the district court or sought a ruling. This issue, therefore, was not preserved.

{28}     "An instruction is correct, and thus proper to submit to a jury, when the instruction is consistent with the law . . . and articulates fairly, completely, and succinctly the relevant law applicable to the facts." *Mireles v. Broderick*, 1994-NMSC-041, ¶ 15, 117 N.M. 445, 872 P.2d 863 (citation omitted). "We will affirm if, as a whole, the instructions fairly represent the law applicable to the issue in question." *Lopez v. Devon Energy Prod. Co.*, 2020-NMCA-033, ¶ 9, 468 P.3d 887 (text only) (citation omitted). These standards have been met. Union Pacific has not persuaded us that the instructions taken as a whole confused the jury or misstated the law. We therefore reject Union Pacific's claim of error in the jury instructions given in this case.

**IV.    Plaintiff's Claims of Negligence Submitted to the Jury Are Each Supported by Substantial Evidence in the Record**

{29}     Union Pacific next argues that two of Plaintiff's claims of negligence submitted to the jury were not supported by substantial evidence, requiring reversal

19

and remand for a new trial. Where there is a general verdict, as there was in this case, if any one of the Plaintiff's theories of negligence is not supported by substantial evidence, reversal and remand for retrial is required. *See Counts v. Burlington N. R.R.*, 952 F.2d 1136, 1140 (9th Cir. 1991); *see also Romero v. Mervyn's*, 1989-NMSC-081, ¶ 21, 109 N.M. 249, 784 P.2d 992 (holding that, when a party's jury instruction on its theory of the case relies on "alternative bases for relief, it is reversible error to submit any one alternative for which there is no substantial evidence").

{30} Union Pacific argues that Plaintiff's claims that (1) "[Union Pacific] failed to properly supervise its employees"; and (2) [Union Pacific] failed to properly train its employees," are not supported by substantial evidence in the record. Union Pacific claims that there was no evidence supporting a need to train its employees on its policies regarding workplace bullying, aggression, or violence, or on the railroad's alleged requirement that any such incidents and any injuries be reported because it had clear written policies prohibiting workplace violence and requiring reporting. We are mindful that the burden of proof for a FELA claim allows the jury to liberally draw inferences from the evidence and that our standard of review on appeal requires this Court to draw all inferences in favor of the verdict. *See Ybarra*, 689 F.2d at 149; *Haaland v. Baltzley*, 1990-NMSC-086, ¶ 18, 110 N.M. 585, 798 P.2d 186.

{31}    In this case there was extensive evidence of aggressive behavior by Magoon over a long period of time, affecting many Union Pacific employees. This conduct, as described by the witnesses, violated Union Pacific's written policies, and yet the railroad claimed to be unaware of it, and took no action to supervise Magoon or to discipline him before he assaulted Plaintiff. There is a reasonable inference from this evidence that Union Pacific was negligent in its supervision either of its foremen and supervisors generally, or specifically in failing to adequately supervise Magoon, and, similarly, that it was not training its employees and supervisors to follow its written policies on how to respond to aggression and physical assaults on the job. The evidence that not one of the approximately twelve employees on the bus who saw Magoon's attack on Plaintiff intervened to stop the assault, or reported it to higher management, supported the inference that Union Pacific did not supervise its employees adequately, enforce compliance with its written policies concerning violence on the job, or train its employees to comply with its written policies on violence and the reporting of incidents on the job. This is sufficient evidence of negligence in supervising and training of its employees to justify a jury instruction on negligent training and supervision—negligence directly attributable to a railroad employer under the FELA. Substantial evidence also supports an inference that this negligence contributed to the railroad's failure to effectively prevent Magoon's foreseeable assault on Plaintiff. Because the claims challenged are supported by

substantial evidence in the record, the jury's general verdict will not be disturbed on appeal.

## V. Union Pacific Failed to Preserve Its Argument Regarding the Adequacy of the Jury Instruction on Damages

{32}     Union Pacific contends that the district court failed to instruct the jury on the proper standard for damages. It claims two points of error: that the inclusion in the damages instruction of the language found in UJI 13-1808 NMRA, which addresses the measure of damages for "aggravation of any preexisting ailment or condition," allowed the jury to provide a duplicative recovery for (1) Plaintiff's "injury" to his neck, and (2) again for the "aggravation" of his preexisting neck condition. Union Pacific also argues on appeal that the damages instruction's introductory paragraph, stating that the jury "must fix the amount of money which will reasonably and fairly compensate" Plaintiff for the "nature, extent and duration of the injury," is an incorrect statement of the law.

{33}     We decline to address these two challenges because Union Pacific failed to preserve them in the district court. Rule 1-051(I) NMRA requires that to preserve an error in jury instructions for appeal, "objection must be made to any instruction given, whether in UJI Civil or not; or, in case of a failure to instruct on any point of law, a correct instruction must be tendered, before retirement of the jury." Moreover, an objection cannot be made in general terms. To preserve a challenge to a jury instruction, "[t]he specific vice in a challenged instruction must be pointed out to the

22

[district] court." *Martinez v. Teague*, 1981-NMCA-043, ¶ 8, 96 N.M. 446, 631 P.2d 1314.

{34}    In this case, the parties each prepared proposed jury instructions. Union Pacific filed two requested instructions that related to the measure of damages: one on damages generally and another instruction addressing the measure of damages if the jury were to find that Plaintiff's injury aggravated a preexisting condition. Both parties' proposed instructions were discussed off the record with the district court for several hours at the end of the final day of testimony, and a single set of jury instructions for the court to read to the jury the next morning was adopted in that conference. The district court then allowed the parties to place any objections to the final jury instructions on the record. Counsel for Union Pacific stated its objections to a number of jury instructions, but made no objection to the damages instruction adopted by the district court. Union Pacific did not alert the district court to either of the errors it now claims on appeal. Nor did it renew its request for its two proposed damages instructions.

{35}    Because the district court was not sufficiently advised of alleged errors in the damages instruction, we do not consider the allegations of error Union Pacific now makes on appeal. *See Hinger v. Parker & Parsley Petroleum Co.*, 1995-NMCA-069, ¶ 32, 120 N.M. 430, 902 P.2d 1033 ("No New Mexico civil case has permitted a litigant to fashion legal objections to jury instructions for the first time on appeal.");

23

*see also Ulibarri v. Jesionowski*, 2023-NMCA-008, ¶ 61, 523 P.3d 624 (declining to consider jury instruction error asserted on appeal where the record lacks evidence of the objections made to the final instruction and the reasons the district court settled on the instructions submitted to the jury).

**VI.    The Jury's Verdict Was Not Excessive as a Matter of Law**

{36}    Union Pacific claims the jury's award of noneconomic damages was excessive. In its posttrial motion, the railroad sought a new trial, or remittitur. Union Pacific debates whether we apply federal or state law to determine whether a jury verdict is excessive. Our Supreme Court in *Vivian v. Atchison, Topeka & Santa Fe Railway Co.*, 1961-NMSC-093, ¶ 9, 69 N.M. 6, 363 P.2d 620, resolved this question, concluding that state law applies. We, therefore, apply state law to determine whether the verdict was excessive.

{37}    We review whether a verdict is excessive de novo, as a matter of law. *See Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 49, 127 N.M. 47, 976 P.2d 999. Although our review is de novo, we must remain mindful "of both the inherently difficult task of assigning monetary value to nonmonetary losses and the proper roles that the jury and the district court judge play in making this determination." *Morga v. FedEx Ground Package Sys., Inc.*, 2022-NMSC-013, ¶ 18, 512 P.3d 774. "Given the difficulty, as well as the lack of a fixed standard, in assessing noneconomic loss, it is well settled that this valuation is left to the jury." *Id.*

24

{38} "The jury's award is excessive if (1) the evidence, viewed in the light most favorable to the plaintiff, does not substantially support the award; or (2) there is an indication of passion, prejudice, partiality, sympathy, undue influence, or a mistaken measure of damages on the part of the fact[-]finder." *Id.* ¶ 17 (alterations, internal quotation marks, and citation omitted). This Court will disturb a jury's verdict only in extreme cases, "when the jury's verdict is so against the weight of evidence that it would be a grave injustice to allow the verdict to stand." *Id.* ¶ 19 (internal quotation marks and citation omitted).

{39} The jury awarded Plaintiff $1,750,000, approximately $200,000 of which was for medical expenses and lost wages. Union Pacific claims the approximately $1,550,000 for pain and suffering and other noneconomic damages "shocks the conscience" and should be found by this Court to be excessive.

{40} Union Pacific's recitation of the evidence in the record concerning Plaintiff's pain and suffering minimizes the injury established by evidence and draws inferences in favor of the railroad, rather than in favor of Plaintiff, as required by our standard of review. Plaintiff's testimony described progressively worsening pain to the point where it was almost unbearable before he had surgery in December 2014. Plaintiff reported that his pain continued up through the time of trial. Plaintiff reported mood changes due to the pain, making him impatient and quick to anger. Plaintiff also presented evidence that he would need future medical care. He

explained that he had been left with "bulging disks" in his neck and that he would need another fusion surgery in the future. Plaintiff's wife substantiated these accounts and described Plaintiff as "more depressed, more withdrawn."

{41} Plaintiff also testified to the limited range of motion in his neck, and the limitations that impairment imposed on his life. Plaintiff could no longer lift his arms above his head. Plaintiff described many activities that he used to enjoy, in which he could no longer participate. Plaintiff explained that the pain impacted his ability to perform everyday tasks.

{42} We are not persuaded that this evidence is "clearly and palpably contrary to the verdict," or that "it is manifest to a reasonable certainty that justice has not been done." *See Morga*, 2022-NMSC-013, ¶ 21 (internal quotation marks and citation omitted). We, therefore, reject Union Pacific's claim that the jury's award is excessive because it is not supported by the evidence.

{43} Although Union Pacific also alleges passion and prejudice on the part of the jury, the second consideration in determining whether damages are excessive, its claim relies on an argument our case law has consistently rejected: that the size of the noneconomic damages alone justifies an inference of passion or prejudice. *See id.* ¶ 40. We have found that the award is supported by substantial evidence in the record, and we, therefore, do not agree that the amount of the award alone evinces passion or prejudice on the part of the jury.

{44} Because the damages awarded are not excessive, we affirm both the district court's denial of Union Pacific's motion for a new trial and the court's denial of remittitur.

**VII. Union Pacific Has a Right to an Offset From the Judgment for Payments Covered by the Collective Bargaining Agreement's Setoff Provision**

{45} Assuming we do not reverse, Union Pacific argues that the district court erred in refusing to offset $106,407.07 from Plaintiff's judgment to avoid double payment by Union Pacific for Plaintiff's medical care. Union Pacific seeks setoff from the judgment in the amount (1) of its payments under the health and welfare policy subject to the railroad's collective bargaining agreement, (2) of its payments for medical expenses made by the RRB and subject to an RRB lien, and (3) of supplemental sickness benefits paid by an insurer and subject to the insurer's lien. The district court denied Union Pacific's postjudgment claim for the setoff of $12,715.26 paid by the RRB for Plaintiff's medical care on the basis that the money is owed to the RRB, a nonparty, and not to Union Pacific. The district court did not explain its rejection of Union Pacific's setoff claim for $85,476.38 it paid under the collective bargaining agreement, or of the $8,214.53 in supplemental sickness payments paid by the insurer.

{46} Union Pacific's $85,476.38 setoff claim is based on a provision in its collective bargaining agreement that provides that medical and health benefits paid in accordance with the terms of the collective bargaining agreement are not intended

27

to duplicate the "amount recovered from . . . the employing railroad," and that such benefits "will be offset against any right of recovery the employee may have against the employing railroad for hospital, surgical, medical or related expenses."

{47} Union Pacific's setoff claim for $12,715.26 to pay off the RRB's lien, was based on 45 U.S.C. § 362(o), and 20 C.F.R. §§ 341.3 through-341.9 (2024), which together create a statutory lien for reimbursement of benefits paid by the RRB. This law, unlike the collective bargaining agreement, however, does not provide a right to a setoff from the judgment for either the RRB or for Union Pacific. *See* 20 C.F.R. §341.7 (2024). Union Pacific also provides no authority for its claim that the supplement sickness benefits provided by an insurer are subject to setoff. Because Union Pacific has not provided authority to support its assertion that a setoff to the judgment to pay the RRB and insurer's liens is mandatory, we rely on our presumption of the correctness of the district court's decision. *See Corona v. Corona*, 2014-NMCA-071, ¶ 26, 329 P.3d 701 ("The appellate court presumes that the district court is correct, and the burden is on the appellant to clearly demonstrate that the district court erred."). The same is true of the insurer's lien for supplemental sickness benefits. Without evidence or argument supporting a mandatory setoff from the judgment, we assume that the district court's judgment is correct.

{48} As to the $85,476.38 paid under the terms of the collective bargaining agreement, we conclude that Union Pacific has demonstrated that those amounts

28

were paid pursuant to a collective bargaining provision specifically providing for a setoff against an employee's FELA judgment. Federal court decisions have approved setoffs from FELA judgments against railroad employers where the right to a setoff is specifically reserved in a collective bargaining agreement. *See Folkestad v. Burlington N., Inc.*, 813 F.2d 1377, 1381-83 (9th Cir. 1987) (citing federal court decisions under 45 U.S.C. § 55 holding that provisions under collective bargaining agreements providing for setoffs to indemnify railroads against FELA liability should not be regarded as a collateral source, and should be enforced). This Court in *Washington v. Atchison, Topeka & Santa Fe Railway Co.*, reviewed this federal law and found it consistent with New Mexico law allowing setoffs from state law judgments as an appropriate means "'to achieve equity and justice by adjusting in one suit all conflicting claims between parties that [are] readily susceptible to an expedient and final resolution.'" 1992-NMCA-066, ¶¶ 5, 7, 13, 114 N.M. 56, 834 P.2d 433 (quoting *Sunwest Bank of Roswell, N.A. v. Miller's Performance Warehouse, Inc.*, 1991-NMSC-085, ¶ 7, 112 N.M. 492, 816 P.2d 1114).

**{49}** We, therefore, reverse the district court's denial of Union Pacific's postjudgment motion for setoff of the amounts for Plaintiff's medical care, the only amounts expressly subject to setoff in the collective bargaining agreement.

**CONCLUSION**

{50}    We remand to the district court with direction to determine the amount of the setoff approved by this opinion and to reduce the judgment by that amount. We otherwise affirm.

{51}    **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**GERALD E. BACA, Judge**

_____
**KATHERINE A. WRAY, Judge**